**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Munderloh, et al., | No. CV-21-08004-PCT-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Biegler GmbH, et al., | |
| Defendants. | |

Pending before the Court is Biegler GmbH's ("Defendant Biegler") Motion to Dismiss Under 12(b)(2) and 12(b)(6) (Doc. 33). Also pending before the Court is Dr. Timothy Munderloh, Dr. Travis Stiegler, and Munderloh Medical Incorporated's ("Plaintiffs") Motion for Leave to File a Surreply (Doc. 45). For the reasons below, both Motions are denied.

## BACKGROUND

For the purposes of the Motion—and unless otherwise noted—the Court construes all facts alleged in the Complaint as true. Defendant Biegler manufactures the Stivax device. (Doc. 1 at 8.) As defined by the Food and Drug Administration ("FDA"), the Stivax device is "an electro-acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture." (Doc. 1 at 13.) In 2016, the FDA authorized the sale of the Stivax device in the United States as an acupuncture device. (Doc. 1 at 13.)

After receiving FDA approval, Defendant Biegler engaged Defendant Solace

Advancement as the importer and distributor of the Stivax device in the United States. (Doc. 1 at 14.)  Both Defendants Biegler and Solace Advancement then contacted other distributors, including Doc Solutions, to market and sell the Stivax device.  (Doc. 1 at 14.) Mark Kaiser ("Mr. Kaiser"), Doc Solutions's Chief Executive Officer, personally promoted, marketed, and sold the Stivax device throughout the United States to various medical providers, including Plaintiffs.  (Doc. 1 at 15.)

Although the FDA had classified the Stivax device as an electro-acupuncture device, Defendants, including Defendant Biegler, marketed the device to medical providers as an "implantable non-narcotic pain management medical device" that was reimbursable by Medicare.  (Doc. 1 at 4–5, 42.)  Importantly, Defendant Biegler knew that the Stivax device was not actually reimbursable.  (Doc. 1 at 11–13, 41.)  Despite this knowledge, Defendant Biegler collaborated with Defendant Solace Advancement to produce promotional materials, including a promotional video, that misrepresented that the Stivax device was implantable and usable by doctors.  (Doc. 1 at 16–18, 40–42.)  Acupuncture was not mentioned in any of these materials.  (Doc. 1 at 17–18.)

In addition to these promotional materials, Defendants Biegler and Solace Advancement created the "Stivax Coding Scheme," pursuant to which the Stivax device would be marketed as reimbursable by Medicare as an implantable pain management device.  (Doc. 1 at 36, 42.)  As part of this scheme, Mr. Kaiser personally visited Plaintiffs to induce them to purchase the Stivax device.  As is the industry norm, Mr. Kaiser trained the purchasing medical providers on how to properly code and bill the Stivax device for reimbursement by Medicare.  (Doc. 1 at 15–17, 26–28.)  Mr. Kaiser instructed Plaintiffs that they should use a particular set of codes to bill for the Stivax device and explained that because the Stivax device was "piercing skin," it could be coded as an implantable pain management device.  (Doc. 1 at 26–28.)  Based on Mr. Kaiser's representations and the promotional materials developed by Defendants Biegler and Solace Advancement, "Plaintiffs purchased hundreds of Stivax devices."  (Doc. 1 at 29.)  Soon thereafter, Plaintiffs billed the Stivax device as they had been instructed by Mr. Kaiser, which resulted

1  in overpayments and audits by Medicare.  (Doc. 1 at 33–37.)

2      Based on the foregoing, Plaintiffs filed suit on behalf of themselves and all others

3  similarly situated against Defendants Biegler, Solace Advancement, and others, alleging

4  violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as

5  common-law fraud claims.  (Doc. 1.)  Defendant Biegler has moved to dismiss for lack of

6  personal jurisdiction and for failure to state a claim upon which relief can be granted.

7  (Doc. 21c33.)

8                          **DISCUSSION**

9  **I. Personal Jurisdiction in Arizona**

10     Defendant Biegler first argues that the Court cannot assert personal jurisdiction over

11 it without violating due process.[1]  (Doc. 33-1.)  On a motion to dismiss for lack of personal

12 jurisdiction, the plaintiff "bears the burden of demonstrating that jurisdiction is

13 appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

14 2004).  "Where, as here, the motion is based on written materials rather than an evidentiary

15 hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'"  *Id.*

16 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  Although the plaintiff

17 cannot "simply rest on the bare allegations of its complaint," *id.* (quoting *Amba Mktg. Sys.,*

18 *Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)), the Court must "take as true all

19 uncontroverted allegations in the complaint."  *Glob. Commodities Trading Grp., Inc. v.*

20 *Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  Allegations that

21 are contradicted by affidavit are not assumed as true, but factual disputes between affidavits

22 are resolved in the plaintiff's favor.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

23 1066, 1073 (9th Cir. 2011).

24     The Court applies Arizona law to determine whether it may exercise jurisdiction

25 over a defendant.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).  "The Arizona

26 long-arm statute provides for personal jurisdiction co-extensive with the limits of federal

27

28 [1] Plaintiff does not seem to contest that Arizona does not have general personal jurisdiction over Defendant Biegler.  Therefore, the Court will only consider whether Arizona has specific personal jurisdiction.

1    due process." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); Ariz. R.

2    Civ. P. 4.2(a).  For a court's exercise of personal jurisdiction over a nonresident defendant

3    to comport with due process, "that defendant must have at least 'minimum contacts' with

4    the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions

5    of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe*

6    *Co. v. Washington*, 326 U.S. 310, 316 (1945)).

7         Here, Defendant Biegler provided an affidavit from its President and CEO Ingeborg

8    Biegler ("Mr. Biegler").  (Doc. 33-1 at 21–24.)  In it, Mr. Biegler claims that Defendant

9    Biegler is an Austrian corporation with its principal place of business in Austria; that

10   Defendant Biegler does not conduct any business operations within the United States and

11   has no physical presence in Arizona; that Defendant Biegler does not market, sell, or

12   distribute products directly to Arizonans; and that Defendant Biegler has no control over

13   where the product is marketed after it is given to the distributor, Defendant Solace

14   Advancement.  (Doc. 33-1 at 22–23.)  Plaintiffs provide no rebuttal evidence of Defendant

15   Biegler's Arizona contacts; instead, Plaintiffs reallege the allegations in the Complaint.[2]

16   (Doc. 43 at 5.)  This is insufficient to defeat Defendant Biegler's Motion.  *Cummings v. W.*

17   *Trial Laws. Ass'n*, 133 F. Supp. 2d 1144, 1154, 1158 (D. Ariz. 2001); *see Data Disc., Inc.*

18   *v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("If only one side of the

19   conflict was supported by affidavit, [the] task would be relatively easy, for [courts] may

20   not assume the truth of allegations in a pleading which are contradicted by affidavit.").

21   Plaintiffs have failed to meet their burden to show that Arizona courts may exercise specific

22   jurisdiction over Defendant Biegler.

23   **II.  Jurisdiction under Rule 4(k)(2)**

24        Plaintiffs argue that this Court may assert jurisdiction pursuant to Federal Rule of

25   Civil Procedure 4(k)(2).  (Doc. 43 at 7.)  The Rule states, "[f]or a claim that arises under

26   federal law, serving a summons or filing a waiver of service establishes personal

27

28   _____
     [2] The Court has considered both the cited exhibits in the Complaint and the evidence in
     Plaintiffs' Surreply.  Neither sufficiently demonstrates that Defendant Biegler committed
     an intentional act directly aimed at Arizona.

jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). To assert jurisdiction under Rule 4(k)(2), (1) the claim must arise under federal law; (2) "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction"; and (3) "the federal court's exercise of personal jurisdiction must comport with due process." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

Plaintiffs clearly meet the first element because they allege two claims arising under federal law.[3] (Doc. 1 at 49–51.) With respect to the second requirement, if the defendant has not named a state in which it would be subject to jurisdiction, "then the federal court is entitled to use Rule 4(k)(2)." *Holland*, 485 F.3d at 461. Defendant Biegler has named no such state. (Doc. 33-1.) Therefore, the only remaining issue is whether this Court's exercise of jurisdiction over Defendant Biegler comports with due process. The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between Defendant Biegler and Arizona, the Court considers Defendant Biegler's contacts with the nation as a whole. *Holland*, 485 F.3d at 462.

The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists. "First '[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.'" *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F.3d at 802). "Second, the claim must arise out of or relate to the defendant's forum-related activities." *Id.* "Finally, the exercise of jurisdiction must be reasonable." *Id.*

The substance of the first element differs depending on the "nature of the claim at

---

[3] "Of course, if a plaintiff properly invokes Rule 4(k)(2), it can rely on pendent jurisdiction for its state law claims, so long as those claims arose under the same nucleus of operative facts." *Grayson v. Anderson*, 816 F.3d 262, 271 (4th Cir. 2016)

issue." *Picot*, 780 F.3d at 1212. "A purposeful availment analysis is most often used in suits sounding in contract." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* Because RICO claims are torts, the purposeful direction analysis is appropriate. *See, e.g.*, *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 991 (C.D. Cal. May 29, 2013); *Kayne v. Ho*, LA CV09-06816 JAK (CWx), 2012 WL 12883918, at *2 (C.D. Cal. Sept. 6, 2012).

### A. Purposeful Direction

"[A] defendant purposefully direct[s] his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803). But "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Thus, specific jurisdiction cannot be established solely by allegations that "a defendant 'engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012), *abrogated by Walden*, 571 U.S. at 290).

### 1. Intentional Act

A defendant commits an intentional act when it acts with the "intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. Plaintiffs argue that the following constitute "intentional acts" for purposes of personal jurisdiction: Defendant Biegler's (i) FDA 510(k) applications for the Stivax device; (ii) "interactive websites fulfilling Stivax device orders, specifically catered to medical providers in the United States; (iii) shipment of the Stivax device to the United States, specifically to [Defendant] Solace Advancement and/or Doc Solutions; and (iv) direction, coordination, and funding with respect to the marketing and sale of the Stivax device in the [United States]." (Doc. 43 at 8.) Mr. Biegler specifically controverts Plaintiffs' fourth assertion

and generally controverts Plaintiffs' second assertion.  (Doc. 33-1 at 22–23.)  Plaintiffs' own allegations corroborate that the Stivax website was maintained by Defendant Solace Advancement, not Defendant Biegler, although there was a link to Defendant Biegler's website on the Stivax website.[4]  (Doc. 1 at 40–41.)  Therefore, the Court must determine whether Plaintiffs' first and third assertions suffice to satisfy purposeful direction.

Defendant Biegler has not denied that it sought and received approval from the FDA to market the Stivax device in the United States.[5]  (Doc. 1 at 42); (Doc. 33-1.)  That is clearly an intentional act.  Plaintiffs have thus satisfied their burden as to this element.

### 2.  Aimed at the Forum

Defendant Biegler clearly aimed its conduct at the United States by seeking approval from a U.S. agency to market to a U.S. audience.  (Doc. 1 at 14, 42.)  Assuming the Complaint's allegations are true, Defendant Biegler was "responsible for the FDA approval to market the Stivax device in the United States" and received such approval in 2016.  (Doc. 1 at 14, 42.)  That is enough to "aim" an intentional act at the forum.  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1212 (S.D. Fla. 2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 982 (9th Cir. 2021); *see also Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007).

### 3.  Causes Harm in the Forum

Plaintiffs allege that Stivax marketing and sales agents represented that it was classified by the FDA as a "implantable non-narcotic pain management medical device" and was thus reimbursable by Medicare.  (Doc. 1 at 4–5.)  Based on that representation, Plaintiffs allegedly purchased Stivax devices and were later audited by Medicare and

---

[4] Defendant Biegler controverted Plaintiffs' allegation that the Stivax website was operated at the direction of Defendant Biegler.  (Doc. 33-1 at 23 ("Once the Stivax product reaches [Defendant Solace Advancement] in Michigan, [Defendant] Biegler has no direction or control over where or how the product is subsequently marketed . . . .")  This contravention has not been rebutted by Plaintiffs.

[5] Although Paul Dryden, a resident of Florida, submitted the official paperwork to the FDA, Defendant's Biegler's name and Austrian address was provided on the 510(k) summary as the official contact, Defendant Biegler was specifically identified in the 510(k) summary as maintaining that "the Stivax System [was] substantially equivalent to the predicate device," and Defendant Biegler was the addressee under "care of Paul Dryden" in the FDA approval letter.  (Doc. 1-2); *see* 21 C.F.R. § 807.40.

denied coverage.   (Doc. 1 at 4–6, 33–37.)   Had Defendant Biegler not sought FDA approval, it presumably would not have been able to sell the Stivax device in the United States.  Moreover, it is the very nature of that approval—the classification of the device—that is the alleged fraud in this lawsuit.  (Doc. 1 at 4–5.)  Because the Stivax device's FDA approval allowed it to be sold in the United States, where the classification was allegedly misrepresented and caused harm, Plaintiffs have sufficiently shown purposeful direction.

## B.  Arising Out of Forum Activities

"The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  The Ninth Circuit "rel[ies] on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Here, as explained above, Defendant Biegler would have been unable to sell the Stivax device, through its distributors, to Plaintiffs without FDA approval.  The fact that the Stivax device was allegedly classified as an "electro-acupuncture device" rather than as a "non-narcotic implantable pain management medical device" underpins this lawsuit.  Therefore, Defendant Biegler's alleged contact—seeking FDA approval—is a but-for cause of the harm alleged.

## C.  Reasonableness

Even if the first two requirements are met, in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable.  *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474–75 (9th Cir. 1995).  For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core–Vent v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993).

In addressing reasonableness, courts consider seven factors: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Int'l*, 141 F.3d at 1323. "No one factor is dispositive; a court must balance all seven." *Id.*

### 1. Degree of Interjection

Even though the Court has concluded that Defendant Biegler purposefully directed its activities at the United States, "the degree of interjection is nonetheless a factor in assessing the overall reasonableness of jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).

To obtain FDA approval, Defendant Biegler filed a Section 510(k) premarket notification of intent to market the Stivax device. 21 C.F.R. § 807.81; (Doc. 1-2.). The notification included information about the Stivax device as well as the submitter's name and address.[6] § 807.92; (Doc. 1-2.). The FDA found that, based on the information provided to it, because the Stivax device was substantially equivalent "to legally marketed predicate devices marketed in interstate commerce . . . or to devices that have been reclassified in accordance with the provisions of the Federal Food, Drug, and Cosmetic Act (Act) that do not require approval of a premarket approval application (PMA)," Defendant Biegler could sell the Stivax device in the United States. (Doc. 1-2 at 2.) Although Defendant Biegler provided information to the FDA, it did not have to undergo extensive FDA testing or trials. Its interjection, therefore, is moderate.

---

[6] The Stivax device's 510(k) summary listed Friedrich Netauschek and Defendant Biegler as Stivax's "official contact." (Doc. 1-2 at 5.)

1

### 2.  Burden on the Defendant

2       "A defendant's burden in litigating in the forum is a factor in the assessment of

3  reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of

4  due process, it will not overcome clear justifications for the exercise of jurisdiction.'"

5  *Panavision Int'l*, 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d

6  126, 128–29 (9th Cir.1995)).   As the Ninth Circuit has noted, "[m]odern means of

7  communication and transportation have tended to diminish the burden of defense of a

8  lawsuit in a distant forum."  *Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981);

9  *Ballard*, 65 F.3d at 1501.

10       Defendant Biegler is headquartered in Austria and thus would have to litigate this

11  case across international borders, and potentially across language barriers, if the Court

12  found personal jurisdiction.  However, because of developments made during the COVID-

13  19 pandemic, modern methods of communication alleviate this burden significantly.  Thus,

14  "[a]lthough this factor cuts in favor of [Defendant Biegler], '[u]nless such inconvenience

15  is so great as to constitute a deprivation of due process, it will not overcome clear

16  justifications for the exercise of jurisdiction.'"  *Roth v. Garcia Marquez*, 942 F.2d 617, 623

17  (9th Cir. 1991) (quoting *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1481 (9th Cir.

18  1986)).  The Court does not find this factor dispositive.

19

### 3.  Sovereignty

20       "The reasonableness of jurisdiction . . . depends also in part upon the seriousness of

21  the potential affront to the sovereignty of a defendant's state."  *Marina Salina Cruz*, 649

22  F.2d at 1272.  "[L]itigation against an alien defendant creates a higher jurisdictional barrier

23  than litigation against a citizen from a sister state."  *Harris Rutsky*, 328 F.3d at 1133.

24  "Although this factor is important, it is not controlling."  *Id.*

25       Because Defendant Biegler is a foreign company, exercising jurisdiction necessarily

26  implicates Austria's sovereignty.  This factor is not dispositive, but it does weigh in

27  Defendant Biegler's favor.

28

### 4.  Forum State's Interest

The United States has an interest in providing redress to individuals who are harmed by the conduct of foreign companies.  That is especially true in a case like this, in which Defendant Biegler is alleged to have specifically sought permission from the FDA to sell the Stivax device to U.S. providers for the use of U.S. patients.  This factor weighs in Plaintiffs' favor.

### 5.  Efficient Judicial Resolution

"This factor focuses on the location of the evidence and witnesses." *Panavision Int'l*, 141 F.3d at 1323.  However, "this factor is 'no longer weighed heavily given the modern advances in communication and transportation.'" *Harris Rutsky*, 328 F.3d at 1133 (quoting *Panavision Int'l*, 141 F.3d at 1323).

Plaintiffs are seeking class certification to represent not only themselves but other medical providers who purchased the Stivax device.  (Doc. 1 at 46.)  Class members could very well be found throughout the United States.  The named Plaintiffs are from Arizona.  (Doc. 1 at 7–8.)  Defendant Solace Advancement is a Michigan LLC, and Defendants Titan Medical Compliance and Dr. Timothy Warren are residents of Kansas.  (Doc. 1 at 8–9.)  Because all of Plaintiffs' claims concern conduct occurring in the United States, most evidence and witnesses are likely in the United States.  Although there may be some evidence in Austria, Plaintiffs' allegation that Defendant Biegler directed its American distributors and agents to misrepresent Stivax's classification implies that much of the evidence that originated with Defendant Biegler is likely now in the hands of other Defendants in the United States.  (Doc. 1 at 14, 36, 40–42.)  Moreover, to the extent that there are witnesses in Austria that may need to be deposed, the Court finds that modern technology alleviates much of the burden.  This factor weighs in Plaintiffs' favor.

### 6.  Plaintiffs' Interest in Convenient and Effective Relief

"[I]n this circuit, the plaintiff's convenience is not of paramount importance." *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, at *10 (D. Ariz. July 17, 2020).  "This factor weighs most strongly in favor of the plaintiff if

the chosen forum presents the only means of litigating a claim, or if refusing to exercise jurisdiction would force the plaintiff to pursue the case in multiple locations." *Id.*

If the Court found that the United States lacked jurisdiction over Defendant Biegler, Plaintiffs would likely have to prosecute two cases in two different forums: one against Defendant Biegler in Austria, if cognizable, and the other against the rest of Defendants in the United States. That is far from "convenient" relief; however, the Court recognizes that this factor should not weigh heavily in the reasonableness analysis. Although this factor weighs in Plaintiffs' favor, it does so slightly.

### 7. Existence of Alternative Forum

"The plaintiff bears the burden of proving the unavailability of an alternative forum." *Harris Rutsky*, 328 F.3d at 1133–34. Plaintiffs have provided no such argument in this case. Although the Court assumes that Austria would provide Plaintiffs a forum in which they could pursue relief, "whether the forum would be adequate is impossible to say on the record as it now stands." *Ballard*, 65 F.3d at 1502. This factor weighs in Defendant Biegler's favor.

### 8. Balancing the Factors

Defendant Biegler has not presented a "compelling case" that this Court's exercise of jurisdiction would violate due process. Factors 2 and 3 weigh squarely in Defendant Biegler's favor, as they do in every case involving a foreign defendant. Factors 1 and 7 likewise weigh in Defendant Biegler's favor. However, the Court finds factors 4 and 5 to be most persuasive. Absent compelling circumstances, it would be unjust to allow a foreign defendant to avail itself of the U.S. market and regulatory scheme yet avoid U.S. laws because of the inconvenience of litigating in a foreign forum that it intentionally targeted. The rest of the Defendants are located in the United States, as is the majority of evidence and witnesses, and Plaintiffs should not have to litigate in Austria under these facts. There is therefore specific personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

1  **III.  Dismissal for Failure to State a Claim**

2          To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil

3  Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the

4  elements of a cause of action"; it must contain factual allegations sufficient to "raise a right

5  to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

6  (2007).  When analyzing a complaint for failure to state a claim, "allegations of material

7  fact are taken as true and construed in the light most favorable to the nonmoving party."[7]

8  *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  However, legal conclusions couched

9  as factual allegations are not given a presumption of truthfulness, and "conclusory

10  allegations of law and unwarranted inferences are not sufficient to defeat a motion to

11  dismiss."  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

12          Unlike the plausibility standard applied to other claims, fraud claims are subject to

13  a heightened pleading standard.  Federal Rule of Civil Procedure 9(b) requires that fraud

14  be pleaded with particularity.  "In alleging fraud or mistake, a party must state with

15  particularity the circumstances constituting fraud or mistake. . . . Malice, intent, knowledge,

16  and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

17  Rule 9(b) "requires the identification of the circumstances constituting fraud so that the

18  defendant can prepare an adequate answer from the allegations."  *Schreiber Distrib. Co. v.*

19  *Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (quoting *Bosse v. Crowell*

20  *Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977)).  "[T]he pleader must state the

21  time, place, and specific content of the false representations as well as the identities of the

22  parties to the misrepresentation."  *Id.* at 1401.  "Averments of fraud must be accompanied

23  by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy*

24  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616,

25  627 (9th Cir. 1997)).  Further, a plaintiff must "set forth what is false or misleading about

26  _____

27  [7] Unlike Defendant Biegler's 12(b)(2) Motion, the Court cannot consider Mr. Biegler's
declaration when deciding its 12(b)(6) Motion without converting the Motion into one for
summary judgment.  *Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir. 1982)

28  ("Once matters outside the pleadings are considered by the court, a Rule 12(b)(6) motion
must be treated as a motion for summary judgment.")  The declaration will not be
considered.

1    a statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc.*

2    *Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

3        **A.  RICO Claim**

4        Defendant Biegler first argues that Plaintiffs' RICO claim should be dismissed for

5    failure to state a claim.  (Doc. 33-1 at 10–11.)  18 U.S.C. § 1962(c) makes it unlawful "for

6    any person employed by or associated with any enterprise engaged in, or the activities of

7    which affect, interstate or foreign commerce, to conduct or participate, directly or

8    indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

9    activity."  Section 1964 creates a civil cause of action for "any person injured in his

10   business or property by reason of a violation of [RICO]."

11       Plaintiffs allege that the Stivax System Enterprise's fraudulent misrepresentations

12   caused them to pay an inflated price for the Stivax device, in violation of § 1962.  (Doc. 1.)

13   Defendant Biegler now moves to dismiss the claim because Plaintiffs have failed to

14   establish standing and have failed to sufficiently plead the RICO and fraud claims.

15   (Doc. 33-1 at 10–11.)

16       **1.  Statutory Standing**

17       Defendant Biegler first argues that Plaintiffs lack standing to bring a RICO claim.

18   (Doc. 33-1 at 10.)  "Under RICO, '[a]ny person injured in his business or property by

19   reason of a violation of section 1962 of this chapter may sue therefor in any appropriate

20   United States district court' for civil damages."'  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d

21   1163, 1168 (9th Cir. 2002) (quoting 18 U.S.C. § 1964(c)).  "To have standing under

22   § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to

23   his business or property; and (2) that his harm was 'by reason of' the RICO violation, which

24   requires the plaintiff to establish proximate causation."  *Canyon Cnty. v. Syngenta Seeds,*

25   *Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S.

26   258, 268 (1992)).

27       **a.  Injury**

28       Plaintiffs' alleged injury, that they paid more for the Stivax device than they would

- 14 -

have had they known it was not reimbursable by Medicare, is a cognizable injury under RICO. (Doc. 33-1 at 10.) The RICO injury statute is "quite similar to the antitrust statute granting standing to 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws,' and consequently the two have been interpreted in tandem." *Mendoza*, 301 F.3d at 1168 (citation omitted) (quoting 15 U.S.C. § 15(a)).

The Supreme Court interpreted § 15 in *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979),[8] where it held that "it taxes the ordinary meaning of common terms to argue . . . that a consumer's monetary injury arising directly out of a retail purchase is not comprehended by the natural and usual meaning of the phrase 'business or property.'" *Id.* at 339. Therefore, any "consumer whose money has been diminished by reason of an antitrust violation has been injured 'in his . . . property' within the meaning of [§ 15]." *Id.*

Here, as alleged in the Complaint, Plaintiffs relied on a misrepresentation, made by Stivax sales agents, that the Stivax device was reimbursable by Medicare. (Doc. 1.) Although Defendant Biegler is not alleged to have directly made this misrepresentation to Plaintiffs, it is alleged to have developed the Stivax Coding Scheme, in which it directed its distributors and sales agents to make this misrepresentation to American consumers. (Doc. 1 at 40–42.) Plaintiffs allege that they relied on this misrepresentation when they purchased Stivax devices "at an excessively high price." (Doc. 1 at 37.) Thus, Plaintiffs' "money has been diminished," and the Complaint states a sufficient injury to establish the first element of RICO standing.[9]

---

[8] The Supreme Court refers to 15 U.S.C. § 15(a) as "Section 4 of the Clayton Act." *Reiter*, 442 U.S. at 337.

[9] To the extent Defendant Biegler argues that Plaintiffs lack Article III standing, that argument is likewise erroneous. (Doc. 33-1 at 10.) Article III standing requires a concrete, particularized, and actual or imminent injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiffs were allegedly fraudulently induced to purchase a product for an inflated price, which caused them economic injury. (Doc. 1 at 37–38, 40.) Clearly, economic injury is sufficient to establish an Article III injury. *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."); *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093–94 (N.D. Cal. Mar. 6, 2013) (acknowledging that plaintiffs will have standing if they are deprived of the "benefit of the bargain" and citing cases in support); *cf. Humana Inc. v. Mallinckrodt ARD LLC*, No. CV 19-06926 DSF (MRW), 2020 WL 3041309, at *16 (C.D. Cal. Mar. 9, 2020).

### b.  Causation

Defendant Biegler also argues that Plaintiffs have failed to show that their injury was proximately caused by Defendant Biegler's conduct.  (Doc. 33-1 at 13.)  "A 'showing that the defendant violated § 1962, the plaintiff was injured, and the defendant's violation was a "but for" cause of plaintiff's injury' is insufficient to meet the requirement in § 1964(c) that the plaintiff's injury be 'by reason of' the RICO violation."  *Canyon Cnty.*, 519 F.3d at 981 (quoting *Holmes*, 503 U.S. at 265–66).  "Rather, a plaintiff must also show that the defendant's RICO violation proximately caused her injury."  *Id.*  "Proximate causation requires 'some direct relation between the injury asserted and the injurious conduct alleged.'"  *Id.* (quoting *Holmes*, 503 U.S. at 268).

Plaintiffs allege that they relied on the misleading promotional material as well as the misrepresentations made by Mr. Kaiser when they decided to purchase the Stivax device.  (Doc. 1 at 6, 15–18, 29.)  Plaintiffs also allege that Defendant Biegler collaborated with Defendant Solace Advancement to create the misleading marketing material, and that Defendant Biegler "controlled all messaging" by Mr. Kaiser and Defendant Solace Advancement to market the Stivax device as reimbursable by Medicare.  (Doc. 1 at 14–15; 42–43.)  These actions are sufficient, if established, to satisfy both but-for and proximate causation.  Had Defendant Biegler not created the misleading promotional material and controlled the misleading marketing by Defendants Solace Advancement and Mr. Kaiser, Plaintiffs would not have received either the material or the misrepresentations made by Mr. Kaiser to have relied upon.  Moreover, Defendant Biegler cannot escape liability because of proximate causation merely because it is not alleged to have itself made any material misrepresentation to Plaintiffs.  Because Plaintiffs—as potential purchasers of the Stivax device—were the "targets" of the scheme that Defendant Biegler allegedly concocted, they have sufficiently established statutory standing under RICO.  *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, 943 F.3d 1243 (9th Cir. 2019) (holding that patients and third-party payor could sue drug manufacturer under RICO even though the misrepresentations were made by doctors instead of

defendants); *Postpichal v. Cricket Wireless, LLC*, No. C 19–07270 WHA, 2021 WL 3403146 (N.D. Cal. Aug. 4, 2021) (holding that customers who relied on misleading marketing could sue telecommunications company under RICO despite "dealers and subsidiaries" acting as "middlemen" in the causal chain); *Humana Inc. v. Mallinckrodt ARD LLC*, CV 19-06926 DSF (MRW), 2020 WL 3041309 (C.D. Cal. Mar. 9, 2020) (holding that third-party payor could sue drug manufacturer under RICO despite doctors' intervening, illegal conduct).

### 2. Racketeering Activity

Defendant Biegler next argues that Plaintiffs have failed to allege with sufficient particularity that Defendant Biegler engaged in racketeering activity. (Doc. 33-1 at 11.) A RICO violation requires Plaintiffs to show "1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity." *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (quoting *Sedima S.P.R.L. v. Imrex Corp.*, 473 U.S. 479, 496 (1985)). "Racketeering activity" is statutorily defined to include, as relevant here, mail fraud, wire fraud, and interstate transport of stolen property. 18 U.S.C. § 1961(1) (citing §§ 1341, 1343, 2314); (Doc. 1 at 50.)

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Id.* "On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Id.* (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). "In the context of a fraud suit

- 17 -

1    involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each]

2    defendant[ ] in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package*

3    *Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989)).

4        "Plaintiffs are not required to show that each RICO defendant including [Defendant

5    Biegler] personally committed at least two acts of mail or wire fraud to establish a pattern

6    of racketeering." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 533 F.

7    Supp. 3d 858, 871 (N.D. Cal. 2021).  Instead, they need only demonstrate that Defendant

8    Biegler "was (1) a knowing participant in a scheme to defraud, (2) that [Defendant Biegler]

9    participated in the scheme with the intent to defraud, and (3) that a co-schemer's acts of

10   mail and wire fraud occurred during [Defendant Biegler's] participation in the scheme and

11   were within the scope of the scheme." *In re Volkswagen "Clean Diesel" Mktg., Sales*

12   *Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *13 (N.D.

13   Cal. Oct. 30, 2017).

14                          **a.  Co-Schemer's Acts of Fraud**

15       Plaintiffs allege that Defendants committed a pattern of mail and wire fraud, which

16   underlies the RICO claim.  (Doc. 1 at 50.)  The elements of mail fraud and wire fraud are

17   "(1) a scheme to defraud, (2) the use of the mails or wires to further that scheme, and (3) the

18   specific intent to defraud." *In re JUUL Labs*, 497 F. Supp. 3d at 595.

19       As to Defendant Biegler specifically, Plaintiffs allege that Defendant Biegler

20   developed  promotional  material  that  misrepresented  that  the  Stivax  device  was  an

21   implantable medical device used by doctors instead of an electro-acupuncture device used

22   by acupuncturists.  (Doc. 1 at 14–16, 39–42.)  It then allegedly provided this material to its

23   distributors and agents.  (Doc. 1 at 39–42.)  Mr. Kaiser is alleged to have forwarded that

24   promotional material to Plaintiffs by email.  (Doc. 1 at 17–18.)  Plaintiffs also generally

25   allege,

26       Defendants invested substantial sums in advertising and marketing the Stivax
27       device  throughout  the  United  States  as  a  reimbursable  non-narcotic
         implantable medical device—rather than an electro-acupuncture device that
28       is not reimbursable by Medicare—on websites, at trade shows, in brochures,

1
2

in newsletters, in videos, on teleconferences and phone calls, and in on-site
presentations at physician offices and ambulatory surgery centers.

3   (Doc. 1 at 3–4.)   In reliance on these misrepresentations, Plaintiffs purchased Stivax
4   devices by filling out order forms, which were processed by Defendant Biegler's
5   distributors, who then mailed the device to fulfill the orders.  (Doc. 1 at 29–30.)  These
6   allegations are sufficient to plead a pattern of Defendants consistently using the mail or
7   wires to perpetuate their fraud for purposes of RICO.  Because the alleged scope of the
8   scheme specifically contemplated the misrepresentation of the Stivax device, and because
9   Defendant Biegler is alleged to have specifically participated in the marketing and sale of
10  the device, (Doc. 1 at 2–6, 14, 39–42), Plaintiffs have sufficiently stated the first element
11  of holding Defendant Biegler liable for the fraud of other Defendants.

12
### b.  Knowing Participant and Intent to Defraud

13          Plaintiffs have sufficiently alleged Defendant Biegler was a knowing participant in
14  a scheme to defraud.  Defendant Biegler was allegedly aware that the Centers for Medicare
15  and Medicaid ("CMS") had deemed the P-Stim device, the Stivax device's predecessor, as
16  not reimbursable by Medicare.  (Doc. 1 at 12); (Doc. 1-6 at 30.)[10]  Even though the FDA
17  found that the Stivax device as "the substantial equivalent of the P-Stim device," (Doc. 1
18  at 13), Defendant Biegler nevertheless "concocted" a scheme in which it marketed the
19  device, through its distributors and sales agents, as Medicare-reimbursable.  (Doc. 1 at 14,
20  17, 22–23, 39–43.)  These allegations sufficiently state that (1) Defendant Biegler knew or
21  reasonably would have known that the Stivax device was not reimbursable, and (2) despite
22  this knowledge, Defendant Biegler nevertheless marketed the device otherwise.  (Doc. 1 at
23  14, 39–43.)   Moreover, as described above, Defendant Biegler allegedly developed
24  misleading promotional materials, including Defendant Biegler's own website that

25
26
27
28

---

[10] "[E]vidence outside the pleadings . . . cannot normally be considered in deciding a
12(b)(6) motion." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). "A
court may, however, consider certain materials—documents attached to the complaint,
documents incorporated by reference in the complaint, or matters of judicial notice—
without converting the motion to dismiss into a motion for summary judgment." *United
States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); see Fed. R. Civ. P. 12(d).  Plaintiffs'
Complaint (Doc. 1) cites and references several exhibits attached to the Complaint.  The
Court considers these in full.

"contain[ed] the same misinformation, concealment, and misrepresentations about the Stivax Device as the Stivax website . . . and [Mr.] Kaiser's [presentations]." (Doc. 1 at 13, 22–23, 28, 40–42.)  Plaintiffs have adequately alleged that despite Defendant Biegler's knowledge of the Stivax's device's non-reimbursability, it nevertheless instructed its sales agents to lie about or conceal that fact.  This is sufficient to plead Defendant's Biegler's knowing participation in a scheme to defraud.

Plaintiffs have also adequately alleged intent to defraud.  Unlike "the circumstances constituting fraud or mistake[,] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  As explained above, Plaintiffs have alleged that Defendant Biegler knew that the Stivax device was not reimbursable but marketed it as reimbursable.  These allegations sufficiently state both knowledge and intent to defraud at the pleading stage.  Because Plaintiffs have sufficiently alleged that Defendant Biegler was a knowing participant in a scheme to defraud and actually intended to defraud, Defendant Biegler is at this point an appropriate defendant for the mail and wire fraud of its alleged co-conspirators. *See In re JUUL Labs*, 497 F. Supp. 3d at 595; *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002).

## B. RICO Conspiracy

Defendant Biegler also argues that Plaintiffs fail to state a claim for RICO conspiracy.  (Doc. 33-1 at 12.)  18 U.S.C. § 1962(d) makes it unlawful for any person associated with an enterprise engaged in interstate commerce to conspire "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  § 1962(c)–(d).  To be liable for a RICO conspiracy, the defendant must have agreed to both (1) "conduct or participate in the affairs of an enterprise"; and (2) commit "at least two predicate acts." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v. Neapolitan*, 791 F.2d 489, 499 (7th Cir. 1986)).  However, the plaintiff need not show that the defendant "*personally* committed at least two acts" to establish the second element; instead, it is only necessary that plaintiff allege that "some member or members of the [e]nterprise" did so. *In re JUUL Labs, Inc.*,

533 F. Supp. 3d at 871–72.  In addition to the two agreements, "conspiracy to violate RICO requires a showing that defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.'"  *Baumer*, 8 F.3d at 1346 (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)).  "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved."  *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002)

Plaintiffs allege that Defendant Biegler "concocted the Stivax Coding Scheme to manipulate and defraud," and that Defendants Biegler and Solace Advancement "collaborated, created, and disseminated marketing and sales material . . . and controlled all messaging associated with marketing and selling the devices."  (Doc. 1 at 42.)  This material is alleged to have contained misrepresentations.  (Doc. 1 at 17–18.)  Plaintiffs also allege that Defendant Biegler required Defendant Solace Advancement, who maintained the Stivax website, to provide a hyperlink to Defendant Biegler's website on the Stivax website, both of which contained misrepresentations about the Stivax device.  (Doc. 1 at 41.)  As explained above, the Complaint sufficiently alleges that Defendant Biegler knew or reasonably would have known that the Stivax device was not reimbursable by Medicare and was to be used by acupuncturists, not by doctors as a medical pain management device.  But it nevertheless created promotional materials that allegedly misrepresented that fact.  Defendant Biegler thus is alleged to have had knowledge that the promotional material it was producing, in collaboration with Defendant Solace Advancement, was fraudulent, or at least misleading.  By allegedly working with Defendant Solace Advancement to misrepresent the Stivax device, with knowledge that Defendant Solace Advancement would use the promotional materials to conduct a misleading marketing campaign in the United States, Defendant Biegler would have agreed that Defendant Solace Advancement should commit fraud.

The same is true of Mr. Kaiser's instructions about billing.  Defendants Biegler and Solace Advancement were allegedly in control of "all messaging associated with marketing

and selling the device[].'' (Doc. 1 at 42.)  Mr. Kaiser personally represented Defendant Biegler as a sales agent and made misrepresentations in that capacity, allegedly at the direction of Defendant Biegler.  (Doc. 1 at 15, 26, 38–42.)  As alleged, therefore, Defendant Biegler did not merely "participat[e] in the supply chain," (Doc. 33-1 at 13), but rather affirmatively collaborated with co-conspirators to commit fraud, which is sufficient to plead a RICO conspiracy.  *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993) ("In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. . . . [O]ne must participate in the operation or management of the enterprise itself.")

### C. State Tort Claims

Defendant Biegler alleges that Plaintiffs' state-law claims are barred by the economic loss doctrine.  (Doc. 33-1 at 16.)  It also alleges that the Complaint fails to meet the heightened pleading standard required to plead state-law fraud claims.  (Doc. 33-1 at 15.)

### 1. Economic Loss Doctrine

The economic loss doctrine "bars a party from recovering economic damages in tort unless accompanied by physical harm." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010) (quoting *Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ct. App. 2003)).  The doctrine "limit[s] a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Id.*  "Arizona courts generally apply the doctrine in product liability and construction defect cases," *Arimilli v. Rezendes*, No. CV-21-00345-PHX-GMS, 2021 WL 3406332, at *4 (D. Ariz. Aug. 4, 2021), but the Arizona Supreme Court has not determined whether the doctrine bars fraud claims. *Jes Solar Co. v. Matinee Energy, Inc.*, No. CV 12-626 TUC DCB, 2015 WL 10943562, at *4 (D. Ariz. Nov. 2, 2015).  "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).  "'[A]bsent controlling

1    authority, federal courts look to existing state law' but refrain from 'predicting potential

2    changes' in that law." *Barrett-Jackson Auction Co. v. Mountain Sports Int'l Inc.*, No.

3    CV-20-00892-PHX-SRB, 2020 WL 9349176, at *3 (D. Ariz. Sept. 9, 2020) (quoting

4    *Ticknor*, 265 F.3d at 939).

5        Two Arizona Court of Appeals cases have addressed the applicability of the

6    economic loss doctrine in fraud cases.  In *Cook v. Orkin Exterminating Co.*, 227 Ariz. 331,

7    258 P.3d 149 (Ct. App. 2011), the Court of Appeals held that the economic loss doctrine

8    barred the plaintiffs' claims, which included claims for fraud and misrepresentation.  *Cook*,

9    227 Ariz. at 335, 258 P.3d at 153.  However, as noted by the Court of Appeals in the second

10   case, *Shaw v. CTVT Motors, Inc.*, 232 Ariz. 30, 300 P.3d 907 (Ct. App. 2013), *Cook* "did

11   not explicitly address the viability of a claim for fraudulent inducement under the economic

12   loss rule" but rather held that, under the limited facts of that case, contractual remedies

13   were sufficient.  *Shaw*, 232 Ariz. at 32, 300 P.3d at 909.  Notably, the *Shaw* court expressed

14   "concerns about applying the economic loss rule . . . to any claim of fraud in the

15   inducement" because the economic loss rule "exists 'to encourage private ordering of

16   economic relationships and to uphold the expectations of the parties,'" which is not

17   furthered when such "private ordering" is procured by fraud.  *Id.* at 33 n.4, 300 P.3d at 910

18   n.4 (quoting *Flagstaff*, 223 Ariz. at 327, 223 P.3d at 671).  Federal courts have found

19   similarly, holding that the economic loss doctrine should not apply to claims for fraudulent

20   inducement because doing so would not further the policy behind the doctrine.  *See Barrett-

21   Jackson*, 2020 WL 9349176, at *4 (collecting cases).

22       This Court agrees with the reasoning in *Barrett-Jackson* and *Shaw* that the public

23   policy behind the economic loss doctrine is not furthered when the underlying contract is

24   procured by fraud, like it is alleged to be in this case.  "If the primary function of the

25   doctrine is 'to encourage private ordering of economic relationships and to uphold the

26   expectations of the parties,' then certainly it would seem inapposite to hold innocent parties

27   to limited contractual remedies when those contractual remedies were based on intentional

28   misrepresentations made by the other party."  *Id.* at *3 (quoting *Flagstaff*, 223 Ariz. at 327,

223 P.3d at 671).   Given that the Arizona Supreme Court has favored a "narrow[], case-specific" approach to the economic loss doctrine—rather than using it as a categorical bar—the Court will not apply it to the facts of this case.  *Flagstaff*, 223 Ariz. at 323–24, 223 P.3d at 667–68.  Plaintiffs' claims are not barred by the economic loss doctrine.

### 2.  Fraudulent Misrepresentation

Defendant Biegler next argues that Plaintiffs have failed to state a claim for fraudulent misrepresentation and fraudulent concealment.  (Doc. 33-1 at 15.)  To make a claim for fraudulent misrepresentation, a plaintiff must show "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury."  *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 494, 803 P.2d 900, 905 (Ct. App. 1990).  In contrast, Arizona also recognizes the tort of fraudulent concealment: "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 496, 38 P.3d 12, 34 (2002).  "Where failure to disclose a material fact is calculated to induce a false belief, 'the distinction between concealment and affirmative misrepresentation is tenuous.'"  *Id.* (quoting *Schock v. Jacka*, 105 Ariz. 131, 133, 460 P.2d 185, 187 (1969)).  Moreover, "a conspirator is liable for any tortious act, even unknown, committed in furtherance of the conspiracy, including acts not personally committed.  *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phx., Inc.*, 197 Ariz. 535, 542, 5 P.3d 249, 256 (Ct. App. 2000).

As explained above, Plaintiffs have adequately pleaded the "who, what, when, where, and how" of the fraud in this case.  *Vess*, 317 F.3d at 1106.  Between 2016 and 2019, Defendant Biegler allegedly conspired with Defendant Solace Advancement to

fraudulently market the Stivax device in the United States as reimbursable by Medicare. (Doc. 1 at 14, 17, 22–23, 39–40, 43.)  Although Defendant Biegler itself may not have made the fraudulent statements directly to Plaintiffs, the alleged agreement with Defendant Solace Advancement (and other defendants) to fraudulently induce sales of Stivax devices would demonstrate that Defendant Biegler may be held liable for Mr. Kaiser's and other sales agents' misrepresentations.[11]  Defendant Biegler's Motion to Dismiss is denied as to the misrepresentation and concealment claims.

### 3.  Civil Conspiracy

Defendant Biegler finally argues that Plaintiffs have failed to plead a claim for civil conspiracy.  (Doc. 33-1 at 15–16.)  "For a civil conspiracy to occur[,] two or more persons must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."  *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306, 757 P.2d 105, 110 (Ct. App. 1988).  Here, Defendant Biegler is alleged to have intended to accomplish a lawful object—sale of the Stivax device—by fraud, an unlawful means.  As explained above, Plaintiffs adequately alleged that Defendant Biegler directed its distributors and sales agents to market the Stivax device as reimbursable by Medicare.  *See supra* Part III.A.2, III.B, III.C.2.  Defendant Biegler's Motion to Dismiss the civil conspiracy claim is denied.

## IV.  Plaintiffs' Motion for Leave to File a Surreply

The Court has read and considered Plaintiffs' lodged Surreply; however, it does not affect the Court's ruling on this matter.  Therefore, Plaintiffs' Motion is denied as moot.

## CONCLUSION

The Court has personal jurisdiction over Defendant Biegler under Rule 4(k)(2)

---

[11] As noted by the Arizona Supreme Court, the distinction between fraudulent concealment and fraudulent misrepresentation in this case is tenuous.  *Schock*, 105 Ariz. at 133, 460 P.2d at 187.  Mr. Kaiser's statements affirmatively misrepresented which billing codes should be used to receive reimbursement; in much the same way, through those statements, Mr. Kaiser actively concealed that the Stivax device was not actually reimbursable by Medicare.  Moreover, the promotional material affirmatively represented that the Stivax device was usable by doctors while also concealing the fact that it was intended for use by acupuncturists.  Regardless of whether the claims are cast as "misrepresentation" or "concealment," Plaintiffs' claims survive the pleading stage.

because it sought and received approval from the FDA to market the Stivax device in the United States and engaged a U.S. distributor to so market.  Defendant Biegler cannot avail itself of the U.S. market and regulatory scheme without subjecting itself to United States' courts.  Moreover, Plaintiffs have adequately pleaded claims under RICO and Arizona law. All motions are denied.

**IT IS HEREBY ORDERED** that Defendant Biegler GmbH's Motion to Dismiss Under Rules 12(b)(2) and 12(b)(6) (Doc. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Surreply (Doc. 45) is **DENIED** as moot.

Dated this 28th day of March, 2022.

G. Murray Snow
Chief United States District Judge