**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Munderloh, et al., | No. CV-21-08004-PCT-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Biegler GmbH, et al., | |
| Defendants. | |

Pending before the Court is Biegler GmbH's ("Defendant Biegler") Motion for Reconsideration of the Court's March 28, 2022 Order Denying Motion to Dismiss (ECF #52) (Doc. 57.)  For the reasons below, Defendant Biegler's Motion is denied in part and granted in part.

## BACKGROUND

The factual allegations are recited in detail in the Court's prior order (Doc. 52.) After Timothy Munderloh, Travis Stiegler, and Munderloh Medical Inc. (collectively "Plaintiffs") filed their complaint (Doc. 1), Defendant Biegler filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (Doc. 33).  Plaintiffs filed a Motion for Leave to File a Surreply (Doc. 45).  The Court denied both Motions, holding that the Court could exercise personal jurisdiction over Defendant Biegler pursuant to Federal Rule of Civil Procedure 4(k)(2) and that the Complaint plausibly alleged violations of the Racketeer Influenced and Corrupt Organizations Act and state-law fraud

claims. (Doc. 52.) Defendant Biegler now asks for reconsideration on the finding of personal jurisdiction.

## DISCUSSION

Defendant Biegler makes three arguments in favor of reconsideration. First, that the Court erred in deciding the third element of purposeful availment: that Defendant Biegler knew that harm was likely to be suffered in the forum state. (Doc. 56 at 4.) Second, Defendant Biegler argues that the FDA approval was not the but-for cause of Plaintiffs' claimed injuries, which is a necessary element of specific personal jurisdiction. (Doc. 56 at 6.) And third, Defendant Biegler argues that finding personal jurisdiction under these facts would impermissibly expand the scope of Rule 4(k)(2). (Doc. 56 at 7.) The Court denies the Motion as to the first and third arguments, and orders a response on the second.

The Ninth Circuit's test for purposeful availment—the first of three elements that must be satisfied for a Court to exercise specific personal jurisdiction—is that the defendant "(1) commit[] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). In its prior order, the Court found that by seeking and receiving FDA approval for the Stivax device, Defendant Biegler committed an intentional act, aimed at the United States, that caused harm it should have known would likely be suffered in the United States. (Doc. 52 at 6–8.) Defendant Biegler takes issue with the third finding.

Several courts have found that seeking and receiving FDA approval is sufficient for establishing purposeful availment. *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1212 (S.D. Fla. 2021) ("[O]ne who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States." (quoting *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009)); *Wilson v. Nouvag GmbH*, No. 15-CV-11700, 2018 WL 1565602, at *4 n.3 (N.D. Ill. Mar. 30, 2018) ("[T]he FDA submissions here unquestionably demonstrate [the defendant's] intent to have its [device] reach the United States market . . ."); *see also Silver Ring Splint Co. v.*

*Digisplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007) ("Particularly persuasive is Defendant's registration with the FDA and its designation of a U.S. agent. Not only do these acts themselves show purposeful availment, they are also indicative of other such acts . . . ."); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 982 (9th Cir. 2021) ("[The defendant's] purported FDA approval supports the conclusion that the defendant sought out the benefits afforded by this country's regulatory regime.")

The FDA approval clearly caused harm in the United States. Plaintiffs alleged, and Defendant Biegler does not rebut, that they suffered financial harm because they were misled into believing the Stivax device was a "non-narcotic implantable pain management medical device" rather than, as the FDA had classified it, an electroacupuncture device. (Doc. 1 at 5–6, 38, 40, 44–45.) Moreover, Plaintiff also alleges that the promotional materials provided by Defendant Biegler's distributors omitted any mention of "acupuncture" and instead marketed the device as administrable "only by physicians and licensed healthcare providers." (Doc. 1 at 2–5, 17–18, 22–23, 39–40, 42.) It is, therefore, the FDA's classification of the Stivax device as an electroacupuncture device that underpins this lawsuit.

To the extent Defendant Biegler argues it could not have known that harm was likely to be suffered in the United States, the Court is unpersuaded. The following facts are not controverted. Defendant Biegler knew that the FDA approval was premised on the Stivax device's predecessor, the P-Stim. (Doc. 1-2.) Defendant Biegler knew that the P-Stim was not reimbursable by Medicare. (Doc. 1-6 at 30); (Doc. 1-7.) Defendant Biegler engaged a U.S. distributor to sell products to the U.S. market. (Doc. 1 at 38); (Doc. 33-1 at 23.) And Defendant Biegler had the Stivax device—either directly or indirectly—shipped to the distributor in Michigan. (Doc. 1 at 38); (Doc. 33-1 at 23.) This is not a case in which Defendant Biegler placed a product into the global market, and it happened to land on U.S. shores. Instead, Defendant Biegler intentionally availed itself of the U.S. regulatory scheme and allowed the device to be sold here. It is therefore completely foreseeable that the Stivax device could cause harm in the United States. The Court did not err, and the

scope of Rule 4(k)(2) jurisdiction will not be impermissibly expanded by this holding: the Ninth Circuit held similarly in a case decided just last year. *Ayla, LLC*, 11 F.4th at 982-83 (holding that the defendant's contract with a U.S. fulfillment center and receipt of FDA approval adequately demonstrated purposeful availment). Defendant Biegler's Motion is thus denied as to these two grounds.

The Court will not decide whether Defendant Biegler's second ground for reconsideration warrants relief at this time. Defendant Biegler argues that the FDA approval was not the but-for cause of the harms alleged, either because the causal chain is too attenuated, or because—as a matter of law—the Ninth Circuit's but-for test should be measured from the alleged wrongful conduct, as opposed to Defendant Biegler's contacts with the forum. The Court will allow Plaintiffs to respond to these arguments. (Doc. 56 at 6–7.)

## CONCLUSION

Defendant Biegler's Motion is denied as to Subsections B and D in its Motion. The Court will permit Plaintiffs to respond to Subsection C.

**IT IS HEREBY ORDERED** that Defendant Biegler GmbH's Motion for Reconsideration of the Court's March 28, 2022 Order (ECF #52) (Doc. 57) is **DENIED** in part. It is denied as to purposeful availment and the argument against expanding the scope of Rule 4(k)(2).

**IT IS FURTHER ORDERED** that Plaintiffs shall respond to Defendant's Motion for Reconsideration (Doc. 57) as to but-for causation only. Plaintiffs shall file their Response within fourteen days from the date of this order. Defendant Biegler may file a Reply within seven days from the date of the Response.

Dated this 14th day of April, 2022.

G. Murray Snow
Chief United States District Judge